Filed 10/17/24  P. v. Hall CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D082979 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD233892) |
| JON HALL, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Eugenia A. Eyherabide, Judge.  Motion to Dismiss Appeal Denied.  Reversed and Remanded.

William D. Farber, under appointment by the Court of Appeal, for Defendant an Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Daniel J. Hilton and Steve Oetting, Deputy Attorneys General, for Plaintiff and Respondent.

## INTRODUCTION

Jon Hall appeals the trial court's October 2019 order rejecting a recommendation by the Secretary of the California Department of Corrections and Rehabilitation (CDCR) to recall his sentence and resentence him in light of recent changes in sentencing law, pursuant to former Penal Code section 1170, subdivision (d) (now section 1172.1).[1]  Because Hall established that neither he nor the public defender's office received notice of the court's denial order—*and the Attorney General did not file any opposition*—we granted Hall's motion for constructive filing of his April 2023 notice of appeal.  The Attorney General now asserts this court's order granting constructive filing of the notice of appeal was "improvidently made" and moves to dismiss the appeal as untimely.  We deny the Attorney General's motion to dismiss but accept the concession that Hall is entitled to have this matter remanded for further proceedings under section 1172.1.

## BACKGROUND

In August 2013, Hall pled guilty to charges of robbery (§ 211) and attempted robbery (§§ 211, 664), and admitted he had a prior 1999 bank robbery conviction and a 2003 robbery conviction, which qualified as two serious felony priors (§§ 667, subd. (a)(1), 668, 1192.7, subd. (c)) and two strike priors (§§ 667, subds. (b)–(i), 1170.12, & 668).

At sentencing in February 2014, the superior court granted Hall's *Romero*[2] motion and dismissed the 1999 bank robbery conviction.[3]  The court

---

[1]     Further undesignated statutory references are to the Penal Code.

[2]     *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497.

then imposed a total prison term of 17 years and four months, consisting of six years on the robbery count (the middle term of three years, doubled for one strike), 16 months consecutive on the attempted robbery count (one-third of the middle term of eight months, doubled for one strike), and two consecutive five-year terms for the serious felony priors.

In a letter dated October 7, 2019, the CDCR Secretary recommended the trial court recall Hall's sentence and resentence him under former section 1170, subdivision (d). The Secretary explained his recommendation was based on a recent amendment of section 1385 that newly conferred the trial court with discretion to dismiss a serious felony prior, or to strike the punishment for a serious felony prior, imposed under section 667, subdivision (a)(1). The letter stated the public defender was copied, along with the presiding superior court judge and the district attorney. However, according to Hall and the public defender's office, neither received a copy of the letter.

By an ex parte minute order on October 21, 2019, the trial court (Judge Eugenia Eyherabide) "decline[d] to exercise its discretion to resentence" Hall pursuant to former section 1170, subdivision (d). The court did not state any reasons for its decision, and neither party were present for the ruling. The minute order directed that a copy of the order be served on the CDCR, district

---

3    We note the court mistakenly referred to the 1999 bank robbery conviction as a 1998 conviction. In any event, the court explained its dismissal of the prior strike conviction was based on the factors that (1) Hall "never used any weapon, masks, other things . . . quite often [seen] in these bank robberies"; (2) the prior strike was "old"; and (3) Hall had "some mental health issues." At the defense's request that Hall's mental health issues be taken into account, the court in imposing sentence recommended Hall "be housed at a hospital facility."

3

attorney, public defender, and Hall. But, according to Hall and the public defender's office, neither received notice of the ruling.

In April 2022, the public defender's office established a unit to address cases selected for resentencing by the CDCR pursuant to former section 1170, subdivision (d). Between April 2022 and spring 2023, the public defender worked with the district attorney and the trial court to identify cases recommended for resentencing under these provisions by the CDCR that had been made before and during the COVID-19 pandemic but "that were never properly remedied (or where the court could not tell if the [recommendation] letters had been addressed)." The court identified Hall's case as was one of these matters.

In September 2022, the trial court (Judge Lisa Rodriguez) appointed the public defender's office to represent Hall in the resentencing matter. At a status conference held November 17, 2022, the court continued the recall and resentencing hearing to January 26, 2023, stating it would be heard by video conference so that Hall could appear by video. The People filed an opposition to the CDCR's recommendation, arguing against any reduction or any significant reduction in Hall's sentence. Hall's counsel filed a sentencing brief and documents in support of resentencing.

Judge Ehyherabide heard the matter on April 3, 2023. According to the minute order, the court took the matter off calendar, finding that "[t]he court previously ruled on this issue on 10/21/19 and does not have jurisdiction to resentence."

On April 28, 2023, Hall's attorney attempted to file a notice of appeal from "the judgment . . . entered . . . October 21, 2019." The superior court clerk marked the notice as "received but not filed." (Capitalization omitted.)

4

On October 24, 2023, Hall filed a motion seeking constructive filing of his notice of appeal. The People did not file an opposition to the motion. On November 17, we granted the unopposed motion and directed the superior court to file the notice of appeal.

DISCUSSION

I.

*The Motion to Dismiss the Appeal Is Denied*

On May 31, 2024, the People filed a motion to dismiss Hall's appeal as untimely. They acknowledge the 2019 order denying resentencing was an appealable order. They contend, however, that the matter became final and the trial court lost jurisdiction to reconsider its order after 60 days had passed. And because the court had no jurisdiction to act in 2023, its refusal to grant relief could not have affected Hall's substantial rights and that denial was not an appealable order. They argue Hall's evidence that he lacked notice of the 2019 order was "woefully inadequate" and thus our order granting constructive filing "was improvidently made." They further argue Hall should have attacked the orders directly in the trial court by means of a petition for writ of error *coram nobis*.

The People are silent as to why they failed to raise any of these challenges seven months ago, when they were served with Hall's motion for constructive filing. We agree with Hall that it is too late. By failing to oppose or challenge Hall's motion, the People have forfeited any claim that Hall's motion and supporting evidence were deficient or inadequate. (See Cal. Rules of Court, rule 8.54(c) ["A failure to oppose a motion may be deemed a consent to the granting of the motion."]; *People v. Zarazua* (2009) 179 Cal.App.4th 1054, 1065 ["[T]he People are forewarned that their future failure to file an opposition to a motion for constructive filing of an appeal

5

may be deemed to be their consent to the granting of the motion.  ([Cal. Rules of Court, r]ule 8.54(c).)"].)

Even if not forfeited, we disagree that Hall failed to establish he was entitled to relief under the constructive filing doctrine.

In support of his motion, Hall submitted his sworn declaration that he "never knew" CDCR had recommended recall of his sentence or that the trial court had ruled on the CDCR's recommendation in October 2019.  He also provided sworn declarations from attorneys and staff at the public defender's office establishing:  (1) A search of their files did not uncover the CDCR's recommendation letter or the court's 2019 order.  (2) The public defender's office "had never received notice of the . . . 2019 ruling" and first became aware of the 2019 order *in November 2022* when their special unit worked through the COVID-19 backlog of CDCR recommendations with the trial court.  And (3) "[t]he delay in preparing the motion for constructive filing of the notice of appeal [wa]s not due to . . . Hall's actions, but due to counsel's need to gather all the evidence, review the trial court file, and to prepare the document."

The doctrine of constructive filing traditionally applies in criminal cases where the appellant is incarcerated and either (1) because of special circumstances, "the delay in filing the notice of appeal (a) has resulted from conduct or representations of prison officials upon which the prisoner relied and (b) has not been due substantially to fault on the part of the prisoner" or (2) the incarcerated appellant relied on his attorney to timely file a notice of appeal and was diligent in making sure the attorney was discharging that responsibility, but the attorney neglected to do so.  (*In re Benoit* (1973) 10 Cal.3d 72, 86–89.)  The doctrine, however, has been applied in special circumstances not involving the prison mailbox rule or an attorney who has

failed to comply with a defendant's request to file a notice of appeal. (See *People v. Olgin* (1955) 137 Cal.App.2d 286, 287–289 (*Olgin*).)

In *Olgin*, the court used the constructive filing doctrine to accept a late-filed notice of appeal when the appellant did not receive notice of the court's ruling until it was too late but filed the appeal immediately upon receiving notice. (*Olgin*, *supra*, 137 Cal.App.2d at pp. 287–289.) There, the defendant attached a notice of appeal to his petition for writ of error *coram nobis* and requested the clerk file the notice of appeal if his petition was denied. (*Id.* at p. 287.) When the court denied the petition, the court directed the notice of appeal to not be filed because it was sent to the court prematurely. (*Ibid.*) The court clerk sent mail advising the defendant that the notice of appeal was not filed, but the defendant did not receive the advisal in time to file the appeal within the deadline. (*Ibid.*) Denying the People's motion to dismiss the appeal, the court concluded that because appellant appealed immediately upon receiving notice of the petition's denial and the rejection of the notice of appeal, it could be deemed constructively filed in the interest of justice. (*Id.* at pp. 288–289.)

The same result obtains here. Hall's delay in filing a notice of appeal does not fall within the traditional constructive filing doctrine. But we are satisfied that, like the defendant in *Olgin,* Hall did not receive notice of the CDCR's initial recall and resentencing recommendation or, more importantly, notice of the court's 2019 order in time to file a timely notice of appeal. In addition to *Olgin*, there are other cases in which similar institutional failures provided a basis for constructive filing so that a defendant retained reasonable access to the courts. (See e.g., *In re Vallery* (1992) 3 Cal.App.4th 1125, 1127–1128 [clerk mailed notice regarding appeal dismissal to incorrect address]; *In re Fierro* (1985) 169 Cal.App.3d 543, 547–548 [CDCR failed to

manage system to allow prompt identification of inmates to receive notice of court orders].) We thus disagree with the People that our order granting constructive filing of the notice of appeal was improvidently made.

II.

*Accepting the Attorney General's Concession, the Matter Is Remanded for Further Proceedings Under Section 1172.1*

The Attorney General concedes that in the event we deny the motion to dismiss, we must remand the matter to the superior court for further proceedings under section 1172.1. We agree and accept the concession as proper.

Former section 1170, subdivision (d)(1), authorized the trial court to modify a defendant's sentence upon a recommendation from the CDCR to recall a previously imposed sentence and resentence the defendant. (*People v. McMurray* (2022) 76 Cal.App.5th 1035, 1039 (*McMurray*); *People v. McCallum* (2020) 55 Cal.App.5th 202, 205–206 (*McCallum*).) This is an exception to the common law rule that the trial court loses resentencing jurisdiction once execution of sentence has begun. (*McCallum*, at p. 210.)

In 2019, when the CDCR first recommended that Hall's matter be recalled for resentencing, former section 1170, subdivision (d)(1), did not specifically provide a defendant with a right to counsel, to a hearing, or to a presumption in favor of resentencing. (*McCallum*, *supra*, 55 Cal.App.5th at pp. 206, 212–216.) But even then, courts recognized that a trial court's rejection of the Secretary's recommendation without an opportunity for the defendant to present additional information relevant to the recommendation was an abuse of discretion. (See *id.* at p. 216.)

Effective January 1, 2022, Assembly Bill No. 1540 (2021–2022 Reg. Sess.) (Stats. 2021, ch. 719, §§ 1–7) (Assembly Bill 1540) renumbered the

recall and resentencing provisions and amended the language governing the procedural requirements. Effective June 30, 2022, section 1170.03 was renumbered as section 1172.1 with no change in text. (Stats. 2022, ch. 58, § 9; see *People v. Pierce* (2023) 88 Cal.App.5th 1074, 1078.)

Assembly Bill 1540 "clarified the Legislature's intent regarding procedural requirements and the provision's application to 'ameliorative laws . . . that reduce sentences or provide for judicial discretion, regardless of the date of the offense or conviction.' (Stats. 2021, ch. 719, § 1(i).)" (*McMurray*, *supra*, 76 Cal.App.5th at p. 1038.) These clarifications included "that, when recalling and resentencing, the court 'shall . . . apply any changes in law that reduce sentences or provide for judicial discretion.' ([former] § 1170.03, subd. (a)(2).) [And w]here, as here, the CDCR recommends recall and resentencing, the court is also now required to hold a hearing (unless the parties otherwise stipulate), state on the record its reasons for its decision, provide notice to the defendant, and appoint counsel for the defendant. ([former] § 1170.03, subds. (a)(6)–(8), (b)(1).) In addition, where a resentencing request is made, there is now a presumption in favor of recall and resentencing of the defendant, 'which may only be overcome if a court finds the defendant is an unreasonable risk of danger to public safety.' ([former] § 1170.03, subd. (b)(2)." (*McMurray*, at p. 1040.) "[T]he Legislature sought through Assembly Bill 1540 to 'ensure due process and equitable application in these types of resentencing cases' and indicate that trial courts should accept the CDCR's resentencing recommendations." (*Ibid.*)

It goes without saying that Hall was afforded none of these procedural protections. When a case involving a clarifying amendment, such as Assembly Bill 1540, is on appeal, "the appropriate resolution is to reverse and remand the matter for further proceedings in compliance with the amended

9

legislation." (*McMurray*, *supra*, 76 Cal.App.5th at p. 1039.)  There is then no need to address whether we must also reverse and remand pursuant to *In re Estrada* (1965) 63 Cal.2d 740, 744.  (See *ibid.* ["If the amendatory statute lessening punishment becomes effective prior to the date the judgment of conviction becomes final then, in our opinion, it, and not the old statute in effect when the prohibited act was committed, applies."]; *McMurray*, at p. 1042 [appellate court's decision to reverse and remand for consideration of the CDCR's recommendation meant there was no need to address whether to reverse and remand pursuant to *Estrada*].)  And because we conclude the trial court's 2019 order denying the CDCR's resentencing recommendation was an abuse of discretion, the court's 2023 order taking the matter off calendar necessarily falls, as it was predicated on the erroneous 2019 order.

## DISPOSITION

The October 21, 2019 order declining to recall and resentence Hall is reversed, and the matter is remanded for further proceedings pursuant to section 1172.1.

DO, J.

WE CONCUR:


O'ROURKE, Acting P. J.


BUCHANAN, J.

10